UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Wendy Mosconas

    v.

Andrew Saul,[1] Commissioner,
Social Security Administration

Case No. 18-cv-883-PB
Opinion No. 2019 DNH 177

# **O R D E R**

Wendy Mosconas, who appears pro se, moves to reverse the decision of the Commissioner of the Social Security Administration ("SSA"), as announced by an Administrative Law Judge ("ALJ"), to deny her application for supplemental security income, or SSI, under Title XVI of the Social Security Act, 42 U.S.C. § 1382. The Commissioner, in turn, moves for an order affirming his decision. For the reasons that follow, I affirm the Commissioner's decision.

## I. Scope of Review

The scope of judicial review of the Commissioner's decision is as follows:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security. He replaced the nominal defendant, Nancy A. Berryhill, who had been Acting Commissioner of Social Security.

supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g) (setting out standard of review for decisions on claims for DIB); see also 42 U.S.C. § 1383(c)(3) (applying § 405(g) to SSI decisions). However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## II. Background

Mosconas was born in 1971. She has worked as a stylist, as a waitress, as a bartender, and as a business owner/manager, but in the 15 years prior to the ALJ's decision, she did not perform any of those jobs at a level that qualifies as "substantial gainful activity" as that term is defined in the social security regulations. See 20 C.F.R. §§ 416.910 & 416.972. When she applied for SSI, Mosconas was living in an encampment of homeless people.

In June of 2015, Mosconas received a physical examination from Dr. Peter Loeser. He reported a chief complaint of lower abdominal pain and noted treatment for abdominal problems, and documentation thereof, dating to the 1990. He also reported:

> Currently, the patient notes episodic mild to severe lower generalized abdominal/pelvic pain, which occurs

2

immediately when upright (sitting/standing) and builds
to a severe level after 2 hours.  The patient notes
almost immediate improvement of these symptoms with
laying down.

Administrative Transcript (hereinafter "Tr.") 247.  After examining Mosconas, Dr. Loeser reported "unremarkable" findings with respect to Mosconas's: head, ears, eyes, nose, throat, and neck; cervical, thoracic, and lumbar spine; and lower extremities.  With respect to Mosconas's lungs, cardiovascular system, and abdomen, Dr. Loeser found: "Abdomen with mild diffuse tenderness to palpation without rebound tenderness or guarding.  Otherwise, unremarkable heart, lung, and abdominal examination."  Tr. 248.  With respect to her upper extremities, he found:

> **The patient den[ies] any range of motion in the right shoulder with associated pain both actively and passively – keeping her elbow locked at her side. Mild generalized pain on palpation of the right glenohumeral joint without crepitus, effusion, or atrophy of the supporting musculature.  Otherwise, unremarkable upper extremity examination . . . .**

Tr. 249.  Finally, with respect to gait and station, Dr. Loeser found:

> Areas examined with expected normal findings:  Normal ability to sit and stand, step up and down, get on and off the examination table, remove and put back on shoes, squat and rise from a squat, ambulate, and walk on toes and heels.  [Exceptions to these findings noted below.]
> **Pertinent findings during this examination: The patient is able to perform the above tasks without apparent pain or deficits.**

3

Tr. 249. Based upon the foregoing findings, Dr. Loeser made the following assessment:

> Lower abdominal pain: Other than mild diffuse abdominal pain and right shoulder pain and no ability to demonstrate any range of motion in the right shoulder, there are several hospital discharge summaries from 1998 and 1997 as noted above. There is no available documentation or imaging studies related to the patient['s] right shoulder symptoms. The patient moves with ease around the examination room without any apparent deficits or impairments.

<u>Id.</u> Based upon the foregoing assessment, Dr. Loeser made the following diagnosis:

> Lower abdominal pain of uncertain etiology – complicated by a history of and multiple procedures related to ureteral duplication, recurrent urinary tracts, anastomotic biliary stricture, and choledochal cyst. Apparent frozen right shoulder of uncertain etiology without any available supportive documentation.

Tr. 258. It does not appear that Mosconas ever saw Dr. Loeser again.

In November of 2015, Mosconas saw Dr. Emily Henderson for the purposes of establishing care and obtaining medical documentation for a disability claim. In her progress note, Dr. Henderson reported

> Mrs. Mosconas is requesting disability as she has abdominal pain when she stands for prolonged periods, which she attributes to gravity pulling on her kidneys and urinary system. The pain is diffuse, and is not associated with any nausea [or] vomiting. It is relieved by lying down, and there are no exacerbating factors aside from standing.

Tr. 254. While Dr. Henderson set out a plan for Mosconas's care, she declined to write a letter in support of an application for disability benefits. As she stated in her progress note: "I explained [to Mosconas] that I will need to obtain more information and cannot provide a letter for disability today during her first clinic appointment." Tr. 256. It does not appear that Mosconas ever saw Dr. Henderson again.

On January 4, 2016, Mosconas applied for SSI, claiming that she had been disabled since January 27, 2015, as a result of kidney disease, anemia, psoriasis, gastroesophageal reflux disease, fibroids, bursitis, ureteral disease, bladder disease, biliary disease, and gastrointestinal disease.

The Disability Determination Explanation ("DDE") form that resulted from Mosconas's application includes an assessment of her physical residual functional capacity ("RFC")[2] performed by Andrea Murphy, who is a single decisionmaker ("SDM").[3] Among other things, Ms. Murphy said that Mosconas could stand and/or walk, with normal breaks, for about six hours in an eight-hour

---

[2] "[R]esidual functional capacity 'is the most [a claimant] can still do despite [his or her] limitations.'" Purdy v. Berryhill, 887 F.3d 7, 10 n.2 (1st Cir. 2018) (quoting 20 C.F.R. § 416.945(a)(1)) (brackets in the original).

[3] "A single decisionmaker is an employee of the Social Security Administration who has no medical credentials." Riel v. Berryhill, No. 18-cv-278-LM, 2019 WL 636883, at *3 (D.N.H. Jan. 25, 2019) (citations omitted), R. & R. approved by 2019 WL 635408 (Feb. 13, 2019).

5

workday and could sit, with normal breaks, for about six hours in an eight-hour workday. See Tr. 32.

The SSA denied Mosconas's application. She appealed that decision, but waived her right to a hearing. Thereafter, an ALJ issued the decision that Mosconas now appeals.

In his decision, dated October 30, 2017, the ALJ found that Mosconas had one severe impairment, which he described as "a right shoulder impairment." Tr. 12. He then found that Mosconas's shoulder impairment was not severe enough to satisfy the criteria that define an impairment that is per se disabling according to the SSA's regulations. The ALJ continued by determining that Mosconas had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except [that] she can [only] occasionally climb, balance, stoop, kneel, crouch and crawl . . . occasionally reach overhead and laterally on the right [and] must avoid concentrated exposure to hazards such as machinery and heights.

Tr. 13. In determining Mosconas's RFC, the ALJ gave great weight to the opinion of Dr. Loeser, but, in accordance with SSA policy, he did not consider the opinion of the single decisionmaker that was reported on Mosconas's DDE form. Finally, after noting that Mosconas had no past relevant work, because she had not worked at a level that satisfied the "substantial gainful activity" standard for the previous 15 years, the ALJ determined that the limitations he included in

6

her RFC had "little or no effect on the occupational base of light unskilled work," Tr. 16.  Accordingly, he ruled that Mosconas had not been under a disability since January 4, 2016, the date on which she filed her application for SSI.

### III. Discussion

A. <u>The Legal Framework</u>

To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The only question in this case is whether the ALJ correctly determined that Mosconas was not under a disability from January 4, 2016, through October 30, 2017.

To decide whether a claimant is disabled for the purpose of determining eligibility for SSI, an ALJ is required to employ a five-step sequential evaluation process.  <u>See</u> 20 C.F.R. § 416.920.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

7

Purdy, 887 F.3d at 10 (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); citing 20 C.F.R. § 416.920).

At the first four steps in the sequential evaluation process, the claimant bears both the burden of production and the burden of proof. See Purdy, 887 F.3d at 9 (citing Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must prove she is disabled by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). If the [claimant's] limitations are exclusively exertional, then the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). "The Grid," as it is known, consists of a matrix of the [claimant's] exertional capacity, age, education, and work experience. If the facts of the [claimant's] situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. However, if the claimant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his [or her] ability to perform jobs he [or

8

she] would otherwise be capable of performing, then
the Grid is only a "framework to guide [the]
decision," 20 C.F.R. § 416.969a(d) (2001). See also
Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)
(discussing use of Grid when applicant has
nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).

B. Mosconas's Claims

In her motion to reverse the Commissioner's decision, Mosconas claims that I should both reverse the Commissioner's decision and order an immediate award of benefits because: (1) the sole RFC assessment of record establishes that she can only work about six hours in an eight-hour workday; (2) the ALJ adopted that RFC assessment; and (3) there is no evidence in the record that she can work "on a regular and continuing basis," 20 C.F.R. § 416.945(b), i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule," Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). In Mosconas's view, the ALJ committed a legal error by determining that she was not disabled because he was bound by his determination that she could not work eight hours a day. There are several problems with that argument.

First, the RFC assessment to which Mosconas refers, i.e., the one by the single decisionmaker that is reported on her DDE form, does not say that she can only work about six hours a day. It says that she can "[s]tand and/or walk (with normal breaks) for a total of: [a]bout 6 hours in an 8-hour workday," Tr. 32,

and that she can also "[s]it (with normal breaks) for a total of: [a]bout 6 hours in an 8-hour workday," id.  A person who can perform six hours of standing and/or walking plus six hours of sitting is not incapable of working eight hours a day.

Second, as the ALJ pointed out, the SDM who rendered the RFC assessment that was reported on the DDE form is not a medical source so, necessarily, her RFC assessment is not a medical opinion.  See 20 C.F.R. § 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources . . . .").  Because an RFC assessment by an SDM is not a medical opinion, such an assessment "does not qualify as substantial evidence on which an ALJ may rely when making an RFC assessment."  Chambers v. Colvin, 16-cv-087-LM, 2016 WL 6238514, at *6 (D.N.H. Oct. 25, 2016) (quoting Stratton v. Astrue, 987 F. Supp. 2d 135, 152 (D.N.H. 2012)) (other citations omitted).  Accordingly, and notwithstanding Mosconas's unsupported assertion to the contrary, the ALJ did not adopt the SDM's RFC assessment or find that she only had the capacity to work for six hours a day.  Rather, the ALJ "expressly note[d] that the single decision-maker opinion has not been considered either as medical opinion evidence, or as non-medical opinion evidence." Tr. 15 (emphasis added).  If the ALJ did not consider the SDM's RFC assessment, he surely did not agree with or adopt it as his own.

In support of her assertion that the ALJ did adopt the SDM's RFC assessment, Mosconas correctly points out that the ALJ said that

> [n]o treating, examining or reviewing source described more significant clinical or diagnostic abnormalities, or assessed greater limitations than those described in the determined residual functional capacity.

Tr. 15. In her view, that statement means that the ALJ fully agreed with the "determined RFC," which she takes to be the RFC by the SDM that was reported on the DDE form. But the "determined RFC" to which the ALJ referred was the RFC that he determined, not the RFC assessed by the SDM; as I have noted, the ALJ expressly stated that he did not consider the SDM's RFC assessment.

Finally, with respect to Mosconas's contention that "[t]he Commissioner did not produce any evidence showing that [she] can perform work in the national economy for 8 hours a day," Cl.'s Mot. to Reverse (doc. no. 15) ¶ 8, I note that it was not the Commissioner's burden to prove that Mosconas had the RFC to work for eight hours a day; it was her burden to prove that she did not. And for the reasons I have just explained, she has not carried that burden; she has produced no evidence that would support an RFC finding by the ALJ that she was incapable of working for eight hours a day.

To be sure, when the sequential evaluation process moves past Step 4, "the Commissioner . . . has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform," Seavey, 276 F.3d at 5 (quoting Arocho, 670 F.2d at 375). But Mosconas is incorrect in her argument that at Step 5, "[t]he Commissioner must come forward with proof that the claimant has the RFC to perform jobs in the national economy that meet[] the requirement[s] of Social Security Ruling (SSR) 96-8p." Cl.'s Mem. of Law (doc. no. 15-1) 4. Rather, at Step 5, the Commissioner must produce evidence of jobs the claimant can do, given the RFC ascribed to the claimant earlier in the sequential evaluation process. And that is just what the ALJ did here. He identified Mosconas's non-exertional limitations, supportably found that they did not significantly erode the occupational base of light unskilled work, and on that basis, he used the "grids" as a framework to determine that Mosconas was not disabled. Accordingly, I conclude that the ALJ committed no error at Step 5 of the sequential evaluation process.

In her response to the Commissioner's motion to affirm, Mosconas reiterates the arguments she made in her motion to reverse, but she also appears to argue that the ALJ's RFC assessment provides a basis for reversal because it is not supported by substantial evidence. Specifically, she argues

that: (1) the ALJ implicitly determined that she had the RFC to work eight hours a day; while (2) her testimony, the opinions of Drs. Loeser and Henderson, and the SDM's RFC assessment all establish, without contradiction, that she lacks the capacity to remain upright (i.e., sitting, standing, or walking) for long enough, without needing to lie down, to work eight hours a day. That argument is not persuasive.

First, as I have already explained, the SDM's RFC assessment did not establish a disabling limitation on Mosconas's ability to remain upright; the SDM determined that Mosconas could stand/walk for about six hours in an eight-hour workday and could also sit for about six hours in an eight-hour workday. Second, while Mosconas asserts that the opinions of Drs. Loeser and Henderson support a finding that she does not have the RFC to work for eight hours a day, those doctors' examination reports do not contain medical opinions that limit Mosconas to less than eight hours a day of being upright as a result of abdominal issues.[4] Rather, the portions of those reports upon which Mosconas relies are her own reports to those doctors. But it is well established that "[s]tatements in a

---

[4] To the contrary, Dr. Loeser found that Mosconas had an unremarkable abdominal examination apart from "mild diffuse tenderness to palpation without rebound tenderness or guarding," Tr. 248, and he found that she had a "[n]ormal ability to sit and stand [and] ambulate," Tr. 249.

13

medical record that merely repeat a claimant's subjective complaints are not medical opinions." Tann v. Berryhill, No. 16-cv-449-JD, 2017 WL 1326235, at *5 n.6 (D.N.H. Apr. 10, 2017). Thus, the only evidence to support the limitation that, according to Mosconas, renders her disabled is her own testimony about her symptoms. But: (1) a claimant's "statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability," SSR 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016); (2) the ALJ supportably found "that the claimant's statements concerning her impairments and their impact on her ability to work [were] not entirely supported in light of her medical history and the reports of the treating and examining physicians," Tr. 14; and (3) Mosconas does not challenge the ALJ's evaluation of her statements about her symptoms.

In short, the ALJ committed no error in assessing Mosconas's RFC.

## IV. Conclusion

Because the ALJ has committed neither a legal nor a factual error in evaluating Mosconas's claim, see Manso-Pizarro, 76 F.3d at 16, I deny the claimant's motion for an order reversing the Commissioner's decision, document no. 15, and I grant the Commissioner's motion for an order affirming his decision,

14

document no. 18.  The clerk of the court shall enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

October 7, 2019

cc: Wendy Mosconas, pro se
  Lisa G. Smoller, Esq.

15